IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

WILLIAM BRANDON DUREN                                        PLAINTIFF

v.             Civil No. 4:16-cv-04074

LIEUTENANT GOLDEN ADAMS,
SERGEANT MILLER; and
CORPORAL GRIFFEN                                        DEFENDANTS

### REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

This is a civil rights action filed *pro se* by Plaintiff, William Brandon Duren, under 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation. Currently before the Court is Defendants' Motion for Summary Judgment. ECF No. 19. After careful consideration, I make the following Report and Recommendation.

### BACKGROUND

Plaintiff filed his Complaint on August 3, 2016, alleging Defendants failed to protect him from other inmates and subjected him to unconstitutional conditions of confinement while he was a pre-trial detainee in the Miller County Detention Center ("MCDC"). ECF No. 1. Plaintiff is currently incarcerated in the Arkansas Department of Correction ("ADC") – East Arkansas Regional Unit, in Marianna, Arkansas. Plaintiff is suing Defendants Lieutenant Golden Adams, Sergeant Alice Miller, and Byron Griffie in their individual and official capacities. Plaintiff is seeking injunctive relief, and compensatory and punitive damages. ECF No. 1.

Defendants Adams, Miller and Griffie filed a summary judgment motion on May 3, 2017, stating they are entitled to judgment as a matter of law because: 1) there is no proof Defendants

failed to protect Plaintiff; 2) Plaintiff was not subjected to unconstitutional conditions of confinement; 3) Defendants are entitled to the protections of qualified immunity; and 4) there is no basis for official capacity liability. On May 23, 2017, Plaintiff filed his Response to the motion for summary judgment. ECF No. 25. Defendants filed a Reply on May 30, 2017. ECF No. 26.

Plaintiff was booked into the MCDC on May 6, 2016. ECF No. 21-1, p. 4. Plaintiff alleges on or about July 9, 2016, he began "getting verbally threatened and extorted by inmates in his assigned housing (West Charlie)". ECF No. 1. On July 11, 2016, Plaintiff claims he submitted a request addressed to Defendant Adams about problems he was having in his barracks. ECF No. 1. According to Plaintiff, after not receiving any response from Defendant Adams, on July 11, 2016, Plaintiff emailed his father Ken Duren later that day and asked him to call the MCDC and speak with Defendant Adams or Miller and notify them he needed to speak with them "emmediately about problems in his barracks". ECF Nos. 1, 25. Plaintiff claims he filed a second request with the MCDC on June 12, 2016, indicating he needed to speak to Defendant Adams about problems he was having. ECF Nos. 1, 25. That same day Plaintiff alleges he also filed a request addressed to Defendant Miller asking to speak to her in private about problems in his barracks. ECF Nos. 1, 25. Plaintiff has not provided copies of these three requests to the Court. However, Plaintiff has submitted an Affidavit dated May 15, 2017,[1] which states "On July 11th 2016 and July 12th 2016 Plaintiff filed Electronic Requests to Lt. Golden Adams and Sgt. Alice Miller asking to speak to them about problems he was having." ECF No. 25, pgs. 20-22.[2]

---

[1] It does not appear Plaintiff's Affidavit has been notarized.
[2] The record reflects Plaintiff filed the following grievances between May 15, 2016 and September 29, 2016: Grievance - #907,574 dated May 15, 2016 regarding speaking with his probation officer; Grievance - #929,090 dated May 24, 2016 regarding clothing items; Grievance - #1,059,783 dated July 19, 2016 relating to conditions of confinement after being placed in protective custody on July 12, 2016; Grievance - #1,059,829 dated July 19, 2016 regarding issues with being denied bail back in May of 2016; Grievance - #1,059,852 regarding Plaintiff's desire to exercise his right to have access to court and legal materials; Grievance - #1,076,070 dated July 26, 2016 requesting a digital recording for a disciplinary

At approximately 11:19 a.m. on July 12, 2016, Plaintiff emailed his father and again asked him to call the MCDC and notify Defendant Adams or Miller that Plaintiff needed to speak to one of them about problems in his barracks. ECF Nos. 1, 25. Plaintiff's father emailed him back stating "Adams said he would send one of his sergeants to see you. Sorry I tried." ECF Nos. 1, 25. About an hour later Plaintiff sent his father another email stating "Nobody has came to see me yet so Im going to write Adams and See whats up." ECF Nos. 1, 25. Plaintiff's father emailed back at 2:33 p.m. and said "I asked them to come see you again and they treated me like a second rate citizen. Adams said he would send one of his sergeants to talk to you thats all I can do". ECF Nos. 1, 25. Around 9:45 p.m. that evening, Plaintiff sent another email to his father stating "Nobody has came to see me yet, if you get this tonite please call up here and ask for Hanning or Guthrie and explain that I need to speak to Hanning in private." ECF Nos. 1, 25.

According to Plaintiff at 10:00 p.m. on July 12, 2016, Plaintiff was escorted to receiving and discharge where he spoke to Defendants Miller and Griffie where "he explained that inmates in his barracks were threatening, verbally assaulting and attempting to extort him". At that time Plaintiff claims he requested to be placed "on protected custody or some type of segregation." ECF Nos. 1, 25. Defendant Griffie then allegedly took Plaintiff back to the West Charlie housing unit. ECF Nos. 1, 25.

---

hearing; Grievance - #1,079,342 dated July 28, 2016 requesting the contraband that was taken be tested; Grievance - #1,084,582 dated July 30, 2016 asserting he is being punished for exercising his right to be free from assaults; Grievance - #1,114,695 dated August 11, 2016 regarding conditions of confinement in Max Echo; Grievance - #1,114,705 dated August 11, 2016 asking for all his requests, grievance emails to and from my father" and any communications submitted by Plaintiff be preserved as evidence in connection with this lawsuit; Grievance - #1,117,544 dated August 12, 2016 regarding allegations of use of force; Grievance - #1,136,380 dated August 21, 2016 regarding conditions in another inmate's cell; Grievance - #1,152,174 dated August 27, 2016 relating to his use of the phones at the MCDC; Grievance - #1,158,804 dated August 30, 2016 relating to his attempts to contact his attorney; Grievance - #1,158,816 dated August 30, 2016 regarding conditions of confinement; Grievance - #1,177,993 dated September 7, 2016 relating to his requests for legal supplies for this lawsuit; Grievance - #1,231,366 dated September 29, 2016 regarding commissary order; Grievance - #1,234,138 dated September 29, 2016 regarding commissary order.

About 11:00 p.m. on July 12, 2016, Plaintiff alleges Defendant Griffie came to Plaintiff's housing unit and pulled out a black inmate known only to Plaintiff as "B-Rock" and spoke to him in private. ECF Nos. 1, 25. After a few minutes B-Rock came back in and "emmediately came up to the Plaintiff, and slapped him with a open hand. The Plaintiff attempted to walk to the front door for help but was struck from behind by a unknown inmate." ECF Nos. 1, 25. Plaintiff claims "as a result of the attack, Plaintiff fell forward, hitting his face on a steel rack – splitting his upper lip and breaking in half one of his teeth." ECF Nos. 1, 25. Plaintiff alleges "for the next several hours Plaintiff was forced to lay awake in physical pain for several hours and fearing another attack." ECF Nos. 1, 25. There is nothing in the record indicating Plaintiff ever filed a medical request with the MCDC after the alleged assault took place nor is there any evidence Plaintiff sought treatment for his alleged injuries at any time while incarcerated at the MCDC.

On the morning of July 13, 2016, Plaintiff filed a request to Defendant Adams requesting to talk to him "emmediatly about a problem in the barracks". At 9:30 a.m. Plaintiff spoke with Defendant Griffie and asked that he be placed in protective custody. According to Plaintiff, Defendant Griffey then made him re-enter the barracks with inmates who had assaulted him. ECF Nos. 1, 25. Twenty minutes later Defendant Griffie returned and escorted Plaintiff to another housing unit known as "Max Echo" where he was placed in protective custody. ECF Nos. 1, 25. Plaintiff emailed his father later that same day explaining he had been moved out of his cell but did not mention anything about being attacked. ECF No. 21-1, p. 1.

Plaintiff filed a Grievance on July 19, 2016, stating he was in protective custody and was being subjected to the same and even harsher conditions of confinement than that of convicted inmates. ECF No. 21-1, p. 21. Plaintiff claims he was held on a 23 hour lockdown 7 days a week and denied outside recreation, television, media, visitation and commissary privileges. EFC No.

4

1. In addition, he alleges "there was no window to see outside or to let sunlight in. Max Echo has no toilette forcing inmates to urinate in the same shower we use to clean ourselves." ECF No. 1. He also alleges he was kept in a cell where a light stays on for twenty-four hours. Plaintiff claims "the physical condition of Max Echo was deplorable. With Graffiti on the walls, mold on walls of floor and shower, no hot water. The only source of drinkable water came from a sink in the dayroom that ran directly on the floor". ECF Nos. 1, 25.

According to the MCDC records, on July 24, 2016, while in protective custody Plaintiff passed what looked like a joint to another inmate. After being confronted by an MCDC officer, Plaintiff dropped a joint on the dayroom floor. On August 1, 2016, Plaintiff was found guilty of disciplinary infractions and sanctioned for 60 days. ECF No. 21-1, pgs. 5-10. Plaintiff acknowledges he was found guilty of a disciplinary violation on August 1, 2016, but asserts "the time spent from July 13th – August 1st 2016 in conditions that match those of a punitive inmate violated his rights under the 14th Ammendment." ECF No. 23, p. 18.

With respect to Plaintiff's claim Defendants failed to protect him, Defendants assert Plaintiff never filed a grievance or a request regarding any alleged threat of harm to him either before or after the alleged attack. ECF No. 21-1, p. 1. They also point out none of the emails Plaintiff sent to his father mention any threat of harm. ECF No. 21-1, pgs. 40-48. Defendants state there is no evidence Plaintiff was even attacked on July 12, 2016, and if Plaintiff ever felt threatened or unsafe in general population and had notified the Defendants, they would have moved Plaintiff to protective custody earlier. ECF No. 20.

As to the condition of confinement claims, Defendants admit when Plaintiff was moved to Max Echo he was placed in his cell for 23 hours a day and was allowed out for one hour each day. They assert Plaintiff was allowed full commissary privileges while in protective custody. ECF

No. 21. Defendants state Max Echo has a working source of drinkable water other than the inmate shower and there is a toilet in every inmate's cell. ECF Nos. 21-1, p. 3, 26-1. They argue none of the conditions described by Plaintiff deprive him of an identifiable human need and therefore do not constitute cruel and unusual punishment. In addition, Defendants argue Plaintiff has not alleged he suffered any physical harm as a result of being subjected to the allegedly inhumane conditions.

## LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986).

The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

**DISCUSSION**

1. <u>Official Capacity Claim</u>

Under section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or claims may be stated against a defendant in both his individual and his official capacities. *Gorman v. Bartch,* 152 F.3d 907, 914 (8th Cir. 1998). With respect to the official capacity claims, they are "functionally equivalent to a suit against the employing governmental entity." *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010). In other words, an official capacity claim against Defendants Adams, Miller and Griffie is treated as a claim against Miller County. *See Murray v. Lene,* 595 F.3d 868, 873 (8th Cir. 2010).

"[I]t is well established that a municipality [or county] cannot be held liable on a *respondeat superior* theory, that is, solely because it employs a tortfeasor." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1214 (8th Cir. 2013). To establish Miller County's liability under section 1983, "plaintiff must show that a constitutional violation was committed pursuant to an official custom, policy, or practice of the governmental entity." *Moyle v. Anderson*, 571 F.3d 814, 817 (8th Cir. 2009) (citation omitted). To establish the existence of an unconstitutional policy, the plaintiff must point to "a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Mettler v. Whiteledge*, 165 F.3d 1197, 1204 (8th Cir. 1999).

In *Johnson v. Douglas County Medical Dept.*, 725 F.3d 825 (8th Cir. 2013), the Court outlined the necessary elements for establishing the existence of an unconstitutional custom. To establish a claim for "custom" liability, [Plaintiff] must demonstrate:

> 1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; 2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's

>policymaking officials after notice to the officials of that misconduct; and 3) That Plaintiff was injured by acts pursuant to the governmental entity's custom, *i.e.*, that the custom was the moving force behind the constitutional violation.

*Id*., 725 F.3d at 828 (citations omitted).

Plaintiff alleges Defendants failed to protect him from other inmates and subjected him to unconstitutional conditions of confinement. The record does not reflect any evidence of an unconstitutional policy or custom of Miller County that contributed in any way to a violation of Plaintiff's civil rights. Accordingly, Plaintiff's claims against Defendants in their official capacity fail as a matter of law.

  2. <u>Failure to Protect</u>

Prison officials have a duty, under the Eighth Amendment, to protect prisoners from violence at the hands of other prisoners. *See Perkins v. Grimes,* 161 F.3d 1127, 1129 (8th Cir. 1998). For a pretrial detainee like Plaintiff, this duty arises under the Due Process Clause of the Fourteenth Amendment. *Kahle v. Leonard,* 477 F.3d 544, 550 (8th Cir. 2007). To prevail on his failure to protect claim, Plaintiff must satisfy a two prong test: (1) show he was "incarcerated under conditions posing a substantial risk of serious harm;" and (2) the prison officials were "deliberately indifferent [to his] health or safety." *See Holden v. Hirner,* 663 F.3d 336, 341 (8th Cir. 2011) (internal citations omitted). The first prong is an objective requirement to ensure the deprivation is a violation of a constitutional right. *Id.* The second, however, is subjective requiring Plaintiff show the official "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837). "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it." *Young v. Selk,* 508 F.3d 868, 873 (8th Cir. 2007). Negligence alone is insufficient to meet the second prong, instead, the official must "recklessly disregard a known, excessive risk of serious harm to the inmate." *Davis v.*

*Oregon County,* 607 F.3d 543, 549 (8th Cir. 2010) (internal quotation marks and citation omitted). Furthermore, "[c]laims under the Eighth Amendment require a compensable injury to be greater than *de minimis.*" *Irving v. Dormire*, 519 F.3d 441, 448 (8th Cir. 2008).[3]

Other than Plaintiff's allegation in his Complaint he began "getting verbally threatened and extorted by inmates in his assigned housing (West Charlie)" on July 9, 2016, there is no evidence he faced a substantial risk of serious harm from other inmates in the protective custody pod. However, even assuming Plaintiff can somehow meet the first requirement of the deliberate indifference standard and prove he was incarcerated under conditions posing a substantial risk of serious harm, the facts in this case do not demonstrate any of the Defendants knew Plaintiff was being threatened prior to the alleged attack on July 12, 2016.

Plaintiff did not file a grievance or a request with the MCDC regarding any alleged threat of harm prior to or after the alleged assault. Plaintiff only communicated to Defendants he needed to speak with them about "problems he was having in his barracks". He never mentions being threatened. Importantly, the emails Plaintiff sent to his father between July 11, 2016 and July 13, 2016, do not contain any mention of an alleged threat of harm to him or that an attack even occurred. Plaintiff has failed to show Defendants "both knew of and disregarded 'an excessive risk to inmate's health or safety.'" *Id. (quoting Farmers,* 511 U.S. at 837).

On July 13, 2016, the day after he was allegedly attacked, Plaintiff filed a request to Defendant Adams requesting to talk to him "emmediatly about a problem in the barracks." ECF No. 1, 25. According to Plaintiff, he spoke with Defendant Griffie at 9:30 a.m. on July 13, 2016,

---

[3]Plaintiff claims "as a result of the attack, Plaintiff fell forward, hitting his face on a steel rack – splitting his upper lip and breaking in half one of his teeth." ECF Nos. 1, 25. However, it does not appear Plaintiff sought any medical attention for his injuries.

9

and Plaintiff was placed in protective custody twenty minutes later. ECF Nos. 1, 25. It is clear the Defendants acted reasonably once they were made aware of the alleged attack on Plaintiff.

Accordingly, Plaintiff's claims against Defendants Adams, Miller and Griffie for failure to protect in their individual capacity fail as a matter of law.

  3. Conditions of Confinement

As an initial matter, Plaintiff can no longer seek injunctive relief from the MCDC as to conditions of confinement as he is no longer incarcerated at that facility. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief). *See also Martin v. Sargent,* 780 F.2d 1334, 1337 (8th Cir. 1985) (holding an inmate's claims regarding prison conditions moot once the inmate was transferred and no longer subject to those conditions). Therefore, Plaintiff's request for injunctive relief as to his conditions of confinement fails as a matter of law.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 851 (1998)(citation omitted). The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Cruel and Unusual Punishment Clause of the Eighth Amendment forbids conditions that involve the "wanton and unnecessary infliction of pain," or are "grossly disproportionate to the severity of the crime." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

Because Plaintiff was a pretrial detainee at the time of the alleged violation of his constitutional rights, his § 1983 claim is analyzed under the Fourteenth Amendment's Due Process Clause. *See Morris v. Zefferi*, 601 F.3d 805,809 (8th Cir. 2010). As a pretrial detainee, Plaintiff

is entitled to "'at least as great' protection as that afforded to convicted prisoners under the Eighth Amendment." *Owens v. Scott Cnty. Jail,* 328 F.3d 1026, 1027 (8th Cir. 2003) (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244, 103 S. Ct. 2979, 77 L.ED.2d 605 (1983). "Under the Fourteenth Amendment, a pretrial detainee's constitutional rights are violated if the detainee's conditions of confinement amount to punishment." *Morris,* 601 F.3d at 809. However, the identical deliberate-indifference standard as that applied to conditions of confinement claims made by convicted inmates is applied in determining whether a pretrial detainee's constitutional rights have been violated. *Butler v. Fletcher,* 465 F.3d 340, 344 (8th Cir. 2006); *Crow v. Montgomery*, 403 F.3d 598 (8th Cir. 2005).

A prisoner alleging an Eighth Amendment violation must prove both an objective and subjective element. *See Revels v. Vincenz*, 382 F.3d 870, 875 (8th Cir. 2004) (*citing Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The defendant's conduct must objectively rise to the level of a constitutional violation by depriving the plaintiff of the minimal civilized measure of life's necessities. The defendant's conduct must also reflect a subjective state of mind evincing deliberate indifference to the health or safety of the prisoner." *Revels*, 382 F.3d at 875 (citations and internal quotation marks omitted). Deliberate indifference is established when the plaintiff shows "the defendant was substantially aware of but disregarded an excessive risk to inmate health or safety." *Revels,* 382 F.3d at 875.

The law clearly indicates a pretrial detainee cannot be punished. *See Bell v. Wolfish,* 441 U.S. 520, 535 (1979). "However, not every disability imposed during pretrial detention amounts to punishment in the constitutional sense." *Smith v. Copeland,* 87 F.3d 265, 268 (8th Cir. 1996) (internal quotations omitted). "Once the Government has exercised its conceded authority to detain a person pending trial, it obviously is entitled to employ devices that are calculated to

11

effectuate this detention." *Bell,* 441 U.S. at 537. When determining whether a particular restriction or condition is considered punishment, courts should consider whether the restriction or condition is reasonably related to a legitimate governmental objective. *Martinez v. Turner*, 977 F.2d 421, 423 (8th Cir. 1992). *See also Bell,* 441 U.S. at 539 ("if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to punishment."). Furthermore, courts are not concerned with *de minimis* levels of imposition on inmates. *Id.*

Plaintiff was moved to protective custody in Max Echo at the MCDC on July 13, 2016, where inmates are subject to lockdown 23 hours a day with one hour a day outside of the cells. In Max Echo there are both pretrial detainees and convicted inmates. In determining whether Plaintiff's lockdown in Max Echo between July 13, 2016 and August 1, 2016 with convicted inmates serving disciplinary time was reasonably related to a security interest I must defer to the MCDC administrator's expert decisions. *See Bell,* 441 U.S. at 540-41, n. 23. The record is clear. Plaintiff was not put on lockdown as punishment but was moved for safety and security reasons at Plaintiff's request. ECF No. 21-1 Affidavit of Landreth. I find there are no genuine issues of material fact as to whether Plaintiff's lock down, in response to his claim he was attacked, was reasonably related to the legitimate governmental objective of managing and maintaining security at the MCDC. *See Bell,* 441 U.S. at 540-41, n. 23.

Plaintiff also claims he was subjected to unconstitutional conditions of confinement because he had no access to television or media, was held in a cell with no window which had a fluorescent light that remained on for twenty-four hours a day, had no commissary privileges, and was not allowed visitation between July 13, 2016 and August 1, 2016. However, the record reflects Plaintiff did in fact have full commissary privileges during his protective custody. ECF No. 21 -

1, Affidavit of Landreth. The Eighth Circuit has consistently held that a demotion to segregation, even without cause, is not itself an atypical and significant hardship. *See Phillips v. Norris,* 320 F.3d 844, 847 (8th Cir. 2003) (absence of contact visitation, exercise privileges and chapel rights for 37 days did not constitute an atypical and significant hardship). I find the restrictions placed on Plaintiff – no television or media, no visitation, cell without a window, light on for twenty-four hours - are *de minimis,* and therefore, do not implicate the Constitution. *See Smith,* 87 F.3d at 268.

Plaintiff also alleges the MCDC had graffiti on the walls, mold on walls and floor of the shower, no access to toilets forcing inmates to urinate in the shower, no hot water, and the only source of drinkable water in Mac Echo was a sink in the dayroom that ran directly onto the floor. However, the record shows Max Echo has a working source of drinkable water other than the inmate shower and there is a toilet in every inmate's cell. ECF No. 26-1, Affidavit of Landreth. With respect to these alleged conditions, Plaintiff must show the conditions he complains of posed a substantial risk of serious harm to his health. *See Farmer v. Brennan,* 511 U.S. 825, 834 (1994).

Plaintiff does not make any allegation he was injured or suffered any harm to his health as a result of the alleged conditions. Consequently, even if Plaintiff's alleged conditions of confinement relating to mold, graffiti, and lack of hot water can somehow be construed as violating his constitutional rights, damages cannot be awarded for the violation alone. There must be an actual injury resulting from the violation to warrant compensatory damages. *See Memphis Community School Dist. v. Stachura,* 477 U.S. 299, 307 (1986) ("[w]here no injury was present, no compensatory damages could be awarded.") (internal quotations omitted). Accordingly, all of Plaintiff's claims relating to his condition of confinement fail as a matter of law.

## CONCLUSION

For the reasons stated, I recommend Defendants Adams, Miller and Griffie's Motion for Summary Judgment (ECF No. 19) be **GRANTED** and all claims against them be dismissed with prejudice.

**The parties have fourteen (14) days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**DATED this 13th day of June 2017.**

                                        /s/    Barry A. Bryant
                                        HON. BARRY A. BRYANT
                                        UNITED STATES MAGISTRATE JUDGE